UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

GUY T. MILLS,

                       Plaintiff,

    v.

MARKS, et al.,

                  Defendants.

Case No. 3:22-cv-00217-RCJ-CSD

SCREENING ORDER ON
FIRST AMENDED COMPLAINT

On August 24, 2022, the Court screened Plaintiff's civil rights complaint under 28 U.S.C. § 1915A.  (ECF No. 7.)  The Court dismissed Plaintiff's complaint without prejudice and with leave to amend.  (*Id.*)  Plaintiff has filed a motion for leave to file excess pages and to bring a claim regarding rehabilitation with a stationary bike that the Court dismissed with prejudice in its screening order.  (ECF No. 8.)  Plaintiff also filed a first amended complaint ("FAC").  (ECF No. 9.)  The Court grants Plaintiff's motion.  The Court accepts the FAC as the operative complaint in this case, and the Court will consider all the claims in the FAC, including the claim that was previously dismissed with prejudice. Plaintiff has also filed a motion for a preliminary injunction and a motion to file excessive pages in his motion for a preliminary injunction.  (ECF Nos. 3, 6.)  The Court will first screen Plaintiff's FAC under 28 U.S.C. § 1915A and then consider Plaintiff's motions.

I.    **SCREENING STANDARD**

Federal courts must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.  *See* 28 U.S.C. § 1915A(a).  In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915A(b)(1),(2).  *Pro se* pleadings, however, must be liberally construed.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements:

(1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

In addition to the screening requirements under § 1915A, pursuant to the Prison Litigation Reform Act (PLRA), a federal court must dismiss a prisoner's claim, if "the allegation of poverty is untrue," or if the action "is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint. When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In making this determination, the court takes as true all allegations of material fact stated in the complaint, and the court construes them in the light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996). Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980). While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. *Id*.

Additionally, a reviewing court should "begin by identifying pleadings [allegations] that, because they are no more than mere conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Finally, all or part of a complaint filed by a prisoner may therefore be dismissed *sua sponte* if the prisoner's claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable (e.g., claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist), as well as claims based on fanciful factual allegations (e.g., fantastic or delusional scenarios). *See Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

## II.    SCREENING OF FAC

In the FAC, Plaintiff sues multiple Defendants for events that took place while Plaintiff was incarcerated at Lovelock Correctional Center ("LCC"). (ECF No. 9 at 1.) Plaintiff sues Defendants Dr. Marks, Director of Nursing ("DON") Parks, Nurse Brian, Warden Garrett, Assistant Warden John Doe 1, Maintenance Director John Doe 2, Nurse John Doe 3, Nurse John Doe 4, Contractor Roe 1, and Subcontractor Roe 2. (*Id.* at 1-3.) Plaintiff brings four counts and seeks monetary and injunctive relief. (*Id.* at 2-46.) The Court will consider Plaintiff's claims in turn.

### A.    Count I

In Count I, Plaintiff alleges that he has a physical disability that impacts his ability to walk. (ECF No. 9 at 2.) Plaintiff is housed at LCC because it is designated a "flat yard." (*Id.*) Although LCC is designated a flat yard, many of the walking surfaces have been

"compromised" by age and a lack of maintenance, making it difficult for Plaintiff to walk between buildings.  (*Id.* at 12.)

Plaintiff needs medically prescribed shoe inserts to provide enough support to allow him to get around the yard at LCC.  (*Id.*)  Plaintiff initially received appropriate shoe inserts, but they eventually wore out.  (*Id.* at 20.)  Plaintiff made both oral and written requests for replacements.  (*Id.*)  Plaintiff asked Defendants Dr. Marks, DON Parks, Nurse Brian, Warden Garrett, Assistant Warden John Doe 1, Nurse John Doe 3, and Nurse John Doe 4 for replacement shoe inserts.  (*Id.* at 20-21.)  All of these Defendants ignored Plaintiff's requests for new shoe inserts.  (*Id.* at 21.)  As a result, Plaintiff had to continue using worn out shoe inserts that did not provide him with the stability that he needed to walk safely.  (*Id.* at 21-22.)

On June 6, 2021, Plaintiff fell while trying to climb an artificial hill between buildings at LCC.  (*Id.*)  The fall caused Plaintiff's kneecap to lodge just above his quadricep muscles, about 8 inches above where it was supposed to be located.  (*Id.*)  Although Plaintiff was in agony, Dr. Marks, DON Parks, Brian, John Doe 3, and John Doe 4 all refused to provide Plaintiff pain medication while he waited 5 hours for an ambulance.  (*Id.*)

The ambulance brought Plaintiff to a hospital, where he was given medication for his pain and stabilized.  (*Id.* at 23.)  After being stabilized at the hospital, Plaintiff was scheduled for surgery and given a prescription for pain medication to use until his surgery.  (*Id.*)  Plaintiff then returned to LCC.  (*Id.*)  Dr. Marks, DON Parks, and Brian ignored the pain medication prescription that Plaintiff received at the hospital, leaving him in pain.  (*Id.*)  After surgery, Plaintiff was prescribed medication to allow him to begin physical therapy, but Plaintiff only received a few days' worth of medication, and only at half the prescribed dosage.  (*Id.*)  Dr. Marks, DON Parks, Brian, John Doe 3, and John Doe 4 were responsible for the failure to provide Plaintiff his prescribed pain medication following his surgery.  (*Id.*)

///

4

Following Plaintiff's surgery, the surgeon told him that he needed to participate in physical therapy, or his leg might fuse to the point that it would never bend at the knee again. (*Id.* at 26.)  Plaintiff sent multiple kites requesting an appointment with Dr. Marks to discuss his post-surgery care, including possible guidance on self-help physical therapy that Plaintiff could do on his own. (*Id.*)  Dr. Marks, DON Parks, Brian, John Doe 3, and John Doe 4 ignored Plaintiff's requests. (*Id.*)

Plaintiff was also denied access to the gym where there were two stationary bikes and weight machines. (*Id.* at 27.)  Plaintiff asked that a stationary bike be placed in a secure area in his housing unit, accessible only to him, but his request was denied. (*Id.*)  Plaintiff's requests for extra pillows, blankets, ice packs, and heating pads were also denied. (*Id.*)  Plaintiff later made direct appeals to Warden Garrett and Assistant Warden John Doe I for physical therapy, access to the gym, and other supplies, and they ignored his requests. (*Id.* at 28.)

Based on these allegations, Plaintiff brings a claim under the Eighth Amendment. (ECF No. 3.)  The Court construes this as a claim of deliberate indifference to a serious medical need.  The Court liberally construes the FAC as bringing three separate claims, one claim based on the failure to provide Plaintiff shoe inserts, one claim based on the failure to provide Plaintiff pain medication following his injury, and one claim based on a failure to provide Plaintiff access to a physical therapist, or the tools to do physical therapy on his own.  The Court will first discuss the standard for stating a claim of deliberate indifference to a serious medical need and then consider each of Plaintiff's claims in turn.

The Eighth Amendment prohibits the imposition of cruel and unusual punishment and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency.'" *Estelle v. Gamble*, 429 U.S. 97, 102 (1976).  A prison official violates the Eighth Amendment when he acts with "deliberate indifference" to the serious medical needs of an inmate.  *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).  "To establish an Eighth Amendment violation, a plaintiff must satisfy both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a

1  subjective standard—deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th
2  Cir. 2012).

3      To establish the first prong, "the plaintiff must show a serious medical need by
4  demonstrating that failure to treat a prisoner's condition could result in further significant
5  injury or the unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091,
6  1096 (9th Cir. 2006) (internal quotations omitted). To satisfy the deliberate indifference
7  prong, a plaintiff must show "(a) a purposeful act or failure to respond to a prisoner's pain
8  or possible medical need and (b) harm caused by the indifference." *Id*. "Indifference may
9  appear when prison officials deny, delay or intentionally interfere with medical treatment,
10  or it may be shown by the way in which prison physicians provide medical care." *Id*.
11  (internal quotations omitted). When a prisoner alleges that delay of medical treatment
12  evinces deliberate indifference, the prisoner must show that the delay led to further injury.
13  *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985)
14  (holding that "mere delay of surgery, without more, is insufficient to state a claim of
15  deliberate medical indifference").

16              **1.    Failure to Provide Plaintiff Shoe Inserts**

17      The Court finds that Plaintiff states a colorable claim of deliberate indifference to a
18  serious medical need based on the failure to provide him shoe inserts. The Court liberally
19  construes the FAC as alleging that Plaintiff has a disability that makes it difficult for him
20  to walk. In order to walk safely, Plaintiff needs shoe inserts to help keep him stable while
21  walking. LCC medical staff, recognizing that Plaintiff needed shoe inserts to walk safely,
22  initially provided him shoe inserts. However, those inserts began to wear out.

23      Plaintiff notified Defendants Dr. Marks, DON Parks, Nurse Brian, Warden Garrett,
24  Assistant Warden John Doe 1, Nurse John Doe 3, and Nurse John Doe 4 that his shoe
25  inserts had worn out and that he needed new shoe inserts in order to walk safely.
26  However, none of these Defendants acted to ensure that Plaintiff received new shoe
27  inserts. As a result, Plaintiff fell while attempting to cross an artificial hill in the LCC yard
28  and suffered serious injuries. These allegations are sufficient to state a colorable claim

of deliberate indifference to a serious medical need at this preliminary screening stage. This claim will proceed against Defendants Dr. Marks, DON Parks, Nurse Brian, Warden Garrett, and Defendants Assistant Warden John Doe 1, Nurse John Doe 3, and Nurse John Doe 4 when Plaintiff learns their identities.[1]

### 2.    Failure to Provide Plaintiff Pain Medication

The Court finds that Plaintiff states a colorable claim of deliberate indifference to a serious medical need based on the repeated failure to provide him pain relief medication after his injury.  The Court liberally construes the FAC as alleging that immediately following his injury, Plaintiff was in agonizing pain.  However, Defendants Dr. Marks, DON Parks, Nurse Brian, Nurse John Doe 3, and Nurse John Doe 4 all refused to provide Plaintiff pain medication while he waited 5 hours for an ambulance.

At the hospital, Plaintiff was given a prescription for pain medication.  But Dr. Marks, DON Parks, and Brian again refused to provide Plaintiff any medication for his pain.  After the surgery, Plaintiff was prescribed medication to help alleviate his pain and allow him to engage in physical therapy, but Plaintiff only received a few days' worth of medication, and at only half the prescribed dose.  Dr. Marks, DON Parks, Brian, John Doe 3, and John Doe 4 all refused to provide Plaintiff further pain medication.

As a result of the failures to provide Plaintiff pain medication, Plaintiff suffered in terrible pain.  The repeated failure to provide Plaintiff pain medication is sufficient to state a colorable claim of deliberate indifference to a serious medical need at this preliminary screening stage.  This claim will proceed against Defendants Dr. Marks, DON Parks, Nurse Brian, and Defendants Nurse John Doe 3 and Nurse John Doe 4, when Plaintiff learns their identities.

---

[1] Although the use of "Doe" to identify a defendant is not favored, flexibility is allowed in some cases where the identity of the parties will not be known prior to filing a complaint but can subsequently be determined through discovery. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). If the true identity of any of the Doe Defendant(s) comes to light during discovery, Plaintiff may either move to substitute the true names of Doe Defendant(s) or move to amend his FAC to assert claims against the Doe Defendant(s) at that time.

### 3.    Failure to Provide Plaintiff Physical Therapy

After Plaintiff's surgery the surgeon informed him that he needed to do physical therapy to ensure that he did not lose the ability to bend his knee.  Plaintiff informed Defendants Dr. Marks, DON Parks, Brian, John Doe 3, and John Doe 4 about his need to either see a physical therapist or receive some guidance on how to do physical therapy on his own.  However, these Defendants ignored Plaintiff's requests.  LCC had a gym with stationary bicycles, but Plaintiff was denied access to the gym.  Plaintiff asked that a stationary bicycle be placed in his unit, to use for his physical therapy, but these Defendant's denied, or ignored Plaintiff's request.  Plaintiff also asked for cold packs, heat pads, and extra pillows and blanks.  These items were necessary to alleviate the pain or swelling in Plaintiff's knee and allow him to push through physical therapy.   The Defendants also denied this request.

After his requests were denied by medical staff, Plaintiff contacted Warden Garrett and Assistant Warden John Doe 1 directly.  Plaintiff asked each of them about seeing a physical therapist, having a stationary bicycle placed in his unit, and receiving cold packs, heat pads, and extra pillows and blankets to help with his physical therapy.  Garrett and John Doe 1 both ignored Plaintiff's requests.

Based on these allegations, Plaintiff informed each of these Defendants that he needed physical therapy and that without physical therapy he could permanently lose the ability to bend his knee.  Plaintiff asked each of these Defendants to see a physical therapist, to receive guidance about doing physical therapy on his own, and to have access to items to help with his physical therapy, including a stationary bicycle.  However, each of the Defendants denied or ignored Plaintiff's requests.  As a result, Plaintiff's ability to bend his knee has been permanently reduced.  These allegations are sufficient to state a colorable claim at this preliminary screening stage. This claim will proceed against Defendants Dr. Marks, DON Parks, Nurse Brian, Warden Garrett, and Defendants Assistant Warden John Doe 1, Nurse John Doe 3, and Nurse John Doe 4, when Plaintiff learns their identities.

### B.    Count IV[2]

In Count IV, Plaintiff alleges that NDOC contracted with Roe1 and Roe 2 to repair pipes at LCC.  (ECF No. 9 at 37-38.)  Roe 1 and Roe 2 were aware that LCC was designated a flat yard, and that there were many disabled inmates who could only safely travel over flat surfaces.  (*Id.* at 38.)  As part of their repair work, Roe 1 and Roe 2 needed to set up a large pipe above ground.  (*Id* at 39.)  Defendants Warden Garrett, Assistant Warden John Doe 1 and Maintenance Director John Doe 2 worked with Roe 1 and Roe 2 set up fences blocking off various areas of the LCC yard.  (*Id.*)  Because other pathways were fenced off during the work, inmates, including Plaintiff, were forced to walk over the above ground pipe that Roe 1 and Roe 2 had set up.  (*Id.*)  The Defendants were aware that inmates would have to walk over the above ground pipe. (*Id.*)

Roe 1 and Roe 2 built a hill of large rocks to cover the above ground pipe.  (*Id.* at 41.)  The result was a steep hill, which was unsuitable for inmates who needed a flat yard for medical needs.  (*Id.*)  Furthermore, the rocks were not firmly situated.  (*Id.*)  On June 6, 2021, Plaintiff fell while trying to travel over the steep rock hill, leading to serious injuries.  (*Id.* at 45.)

Based on these allegations, Plaintiff brings negligence and Eighth Amendment claims against Warden Garrett, John Doe 1, and John Doe 2, as well as a negligence claim against Roe 1 and Roe II.  (ECF No. 9 at 37.)  The Court will first consider Plaintiff's negligence claims and then consider his claim under the Eighth Amendment.

### 1.    Negligence Claims

Under Nevada law, the State of Nevada has generally waived sovereign immunity for state tort actions in state court. Nev. Rev. Stat. § 41.031(1). In order to sue a state employee, or an "immune contractor," a plaintiff is required to sue the State of Nevada. *See* Nev. Rev. Stat. § 41.0337(1) ( "No tort action arising out of an act or omission within the scope of a person's public duties or employment may be brought against any present

---

[2] Because Count IV is closely related to Count I, the Court will consider the allegations in Count IV next.

9

or former" employee or immune contractor unless "the State or appropriate political subdivision is named a party defendant."). An immune contractor includes any person or corporation which is an independent contractor under NRS 333.700. Nev. Rev. Stat. § 41.0307(3). An independent contractor "is a natural person, firm or corporation who agrees to perform services for a fixed price according to his, her or its own methods." Nev. Rev. Stat. § 333.700. Based on the allegations in the FAC, it appears that Roe 1 and Roe 2 were immune contractors.

In *Craig v. Donnelly*, the Nevada Court of Appeals addressed whether a plaintiff had to name the State as party in a state court case and held that "while a plaintiff must name the State as a party to any state tort claims in order to comply with NRS 41.031 and NRS 41.0337, this statutory requirement does not apply to 42 U.S.C. § 1983 claims, even when brought in the same complaint as a plaintiff's state tort claims. 439 P.3d 413 (Nev. App. 2019). "Indeed, the State cannot be named as a party to a plaintiff's § 1983 civil rights claims." *Id.* at 414.

With respect to federal court cases, the State of Nevada does not waive its sovereign immunity. Nev. Rev. Stat. § 41.031(3). Generally, the State of Nevada and arms of the state cannot be sued in federal court. *See O'Connor v. State of Nev.*, 686 F.2d 749, 750 (9th Cir. 1982) (holding that "Nevada has explicitly refused to waive its immunity to suit under the eleventh amendment . . . The Supreme Court has made it clear that section 1983 does not constitute an abrogation of the eleventh amendment immunity of the states"). In *Stanley v. Trustees of California State Univ.*, 433 F.3d 1129 (9th Cir. 2006), the Ninth Circuit held that 28 U.S.C. § 1367 does not abrogate state sovereign immunity for supplemental state law claims. *Id.* at 1133-34. Although the State of Nevada may consent to federal court jurisdiction for state law claims through removal, this is not a removed case. *See Lapides v. Bd. of Univ. Sys. Of Ga.*, 535 U.S. 613 (2002) (holding that state's removal of suit to federal court constitutes waiver of its sovereign immunity).

Thus, in order to bring a tort claim against a state employee or an immune contractor, Plaintiff must name the State of Nevada as a Defendant. However, Plaintiff

cannot name the State of Nevada as a Defendant in this case because the State of Nevada has sovereign immunity under the Eleventh Amendment.  As such, Plaintiff cannot bring a tort claim against a state employee or an immune contractor in this action. The Court dismisses Plaintiff's negligence claims without prejudice, but without leave to amend, because this Court lacks jurisdiction over the State of Nevada, a necessary party to Plaintiff negligence claims.  *See Hirst v. Gertzen*, 676 F.2d 1252, 1264 (9th Cir. 1982) (holding that, where Montana law deemed governmental entities indispensable parties in a state tort claim against a state employee, the federal court had no supplemental jurisdiction over the state tort claim if it had no jurisdiction over the indispensable party).

## 2.    Eighth Amendment Claim

The Court construes Plaintiff's Eighth Amendment claim as a claim of deliberate indifference to unsafe prison conditions.  The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones.  *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981); *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  The "treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."  *Helling v. McKinney*, 509 U.S. 25, 31 (1993).  The Eighth Amendment imposes duties on prison officials to take reasonable measures to guarantee the safety of inmates and to ensure that inmates receive adequate food, clothing, shelter, and medical care.  *Farmer*, 511 U.S. at 832.

To establish violations of these duties, the prisoner must establish that prison officials were deliberately indifferent to serious threats to the inmate's safety.  *Id*. at 834. To demonstrate that a prison official was deliberately indifferent to a serious threat to the inmate's safety, the prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference."  *Id*. at 837.  Prison officials may not escape liability because they cannot, or did not, identify the specific source of the risk; the serious threat can be one to which all prisoners are exposed.  *Id*. at 843.

The Court finds that Plaintiff states a colorable claim of deliberate indifference to unsafe prison conditions.  The Court liberally construes the FAC as alleging that LCC is designated a flat yard.  Warden Garrett, Assistant Warden John Doe 1, and Maintenance Director John Doe 2 were all aware that LCC was designated a flat yard and that many inmates at LCC, such as Plaintiff, cannot safely walk over slopes or hills.

Contractors Roe 1 and Roe 2 were hired to repair pipes at LCC.  As part of their repairs, they set up an above ground pipe and constructed a makeshift hill to cover the pipe.  They also closed off areas of the yard, which meant that inmates had to walking over the makeshift hill in order to get to various buildings at LCC.  The makeshift hill was steep, and it was made out of large rocks, which were not firmly set in place.  Garrett, John Doe 1, and John Doe 2 were aware of the work that Roe 1 and Roe 2 were doing. They knew that inmates would have to walk over the makeshift hill and that the hill was steep and made up of large rocks, which were not firmly set in place.

Based on these allegations, Garrett, John Doe 1, and John Doe 2 knew that many inmates at LCC could not safely walk over hills or steep inclines.  They also knew that Roe 1 and Roe 2 had set up a steep artificial hill made up of rocks that inmates would have to walk across.  However, they did not take any action to ensure that the artificial hill was set up in a manner that would allow inmates who needed a flat yard to safely walk across it.  These allegations are sufficient to state a colorable claim at this preliminary screening stage.  This claim will proceed against Defendant Garrett and Defendants John Doe 1 and John Doe 2, when Plaintiff learns their identities.

### C.    Count II

In Count II, Plaintiff alleges that he has routine medical needs unrelated to the injuries that he suffered on June 6, 2021.  (ECF No. 9 at 29.)  Plaintiff's other medical needs include high blood pressure, leg swelling, edema, and potential blood clots.  (*Id.*) Since Plaintiff began pursuing legal action, Defendants Dr. Marks, DON Parks, Nurse Brian, Nurse John Doe 3, and Nurse John Doe 4 have stopped providing Plaintiff treatment for any of his medical needs.  (*Id.*)

1       Dr. Marks refuses to meet with Plaintiff or prescribe Plaintiff his necessary

2    medications, including statins, blood thinners, and medication for high blood pressure.

3    (*Id.* at 30.)  DON Parks refuses to respond to Plaintiff's inquiries and has continued to

4    refuse to give Plaintiff insoles for his shoes. (*Id.*)  DON Parks has also refused to schedule

5    appointments for Plaintiff to see Dr. Marks, staff nurses, or a physical therapist.  (*Id.*)

6    Nurses Brian, John Doe 3, and John Doe 4 refuse to answer Plaintiff's kites or oral

7    requests.  (*Id.*)

8       Based on these allegations, Plaintiff brings a claim of retaliation under the Eighth

9    Amendment.  However, the Eighth Amendment does not support a retaliation claim.

10    Accordingly, the Court dismisses Plaintiff's retaliation claim under the Eighth Amendment

11    with prejudice, as amendment would be futile. The Court liberally construes the FAC as

12    bringing a retaliation claim under the First Amendment.

13       Prisoners have a First Amendment right to file prison grievances and to pursue

14    civil rights litigation in the courts. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2004).

15    "Without those bedrock constitutional guarantees, inmates would be left with no viable

16    mechanism to remedy prison injustices.  And because purely retaliatory actions taken

17    against a prisoner for having exercised those rights necessarily undermine those

18    protections, such actions violate the Constitution quite apart from any underlying

19    misconduct they are designed to shield."  *Id*.

20       To state a viable First Amendment retaliation claim in the prison context, a plaintiff

21    must allege: "(1) [a]n assertion that a state actor took some adverse action against an

22    inmate (2) because of (3) that prisoner's protected conduct, and that such action (4)

23    chilled the inmate's exercise of his First Amendment rights, and (5) the action did not

24    reasonably advance a legitimate correctional goal."  *Id*. at 567-68.  Total chilling is not

25    required; it is enough if an official's acts would chill or silence a person of ordinary

26    firmness from future First Amendment activities.  *Id*. at 568-69.

27       The Court finds that Plaintiff fails to state a colorable First Amendment retaliation

28    claim.  Plaintiff does not allege that the Defendants' actions chilled his exercise of his First

1  Amendment rights, or would chill or silence a person of ordinary firmness from future First

2  Amendment activities.  Based on this lawsuit, it appears that Plaintiff has continued

3  exercising his First Amendment rights without hindrance.

4        Furthermore, medical staff is entitled to refuse to treat a patient who is actively

5  suing them.  In that circumstance, it is the responsibility of prison officials to ensure that

6  an inmate can see a different medical provider.  Plaintiff briefly states that Warden Garrett

7  and Assistant Warden John Doe 1 were aware of his medical needs, but he does not

8  allege that they took any action against him in retaliation for his lawsuit.  The Court

9  dismisses Plaintiff's First Amendment retaliation claim without prejudice.

10       **D.    Count III[3]**

11       In Count III Plaintiff, alleges that he was seen by an outside provider to be fitted

12  for new insoles in May 2022.  (ECF No. 9 at 33.)  However, as of September 2022, Plaintiff

13  had not received the insoles.  (*Id.*)  Plaintiff believes that Dr. Marks, DON Parks, and/or

14  Nurse Brian have the insoles but have refused to give the insoles to him.  (*Id.*)  Plaintiff

15  also has other medical needs which are not being met, either out of retaliation for his legal

16  case or due to a lack of resources.  (*Id.*)  Plaintiff's other medical needs include high blood

17  pressure, edema, chronic pain, potential blood clots, and a history of heart problems.  (*Id.*)

18  Plaintiff also needs to see a mental health provider regarding his related mental health

19  trauma.  (*Id.*)

20       Plaintiff separately alleges that although LCC is designated as a flat yard, the

21  facility's pathways are in bad condition.  (*Id.* at 34.)  Asphalt and cement walking paths

22  are riddled with repair cuts and patches due to a lack of proper maintenance.  (*Id.*)

23  Patches are made with loose gravel and dirt.  (*Id.*)  Although surfaces were scheduled to

24  be repaired in the summer of 2022, the repairs have not been made.  (*Id.* at 36.)

25  ///

26

27       [3] The Court notes that it appears that instead of the first page of Count III, the FAC
includes a duplicate of the first page of Count I.  (ECF No. 9 at 5.)  Count III then appears

28  to continue from this duplicate page.  (*Id.* at 33.)  Although the first page of Count III
appears to be missing, the Court will screen Count III based on the remaining pages.

Based on the allegations in Count III, Plaintiff seeks injunctive relief.  (*Id.* at 6.) Specifically, Plaintiff requests that he receive medical care and that a safe pathway is built at LCC.  (*Id.*)  The Court will consider Plaintiff's claims about his medical care and the pathway at LCC in turn.

### 1.    Plaintiff's Medical Care

The Court construes Count III as bringing a claim of deliberate indifference to a serious medical need and seeking injunctive relief against Warden Garrett.[4]  The Court finds that Plaintiff states a colorable claim for injunctive relief.  The Court liberally construes the complaint as alleging that Plaintiff suffered a serious injury for which he needs physical therapy, and that without physical therapy, he could lose the ability to bend his knee.  Plaintiff also has several other ongoing medical conditions, including high blood pressure, edema, chronic pain, potential blood clots, and a history of heart problems.  Without treatment, these conditions have worsened, and Plaintiff could suffer a heart attack.

The Court further construes the FAC as alleging that Warden Garrett has the authority to ensure that Plaintiff receives treatment for his various medical conditions. These allegations are sufficient to state a colorable claim for injunctive relief against Warden Garrett at this preliminary screening stage.

### 2.    The Condition of the LCC Yard

The Court construes Plaintiff's claim regarding the state of the yard at LCC as a claim of deliberate indifference to unsafe prison conditions.[5]  The Court finds that Plaintiff states a colorable claim for injunctive relief based on the allegedly unsafe nature of the walking paths.  The Court liberally construes the FAC as alleging that LCC is designated a flat yard.  Because of difficulty walking, Plaintiff needs a flat yard to walk safely. Although the yard at LCC is flat, the walking paths have deteriorated significantly over

---

[4] The Court discusses the standard for stating a claim of deliberate indifference to a serious medical need *supra* Section II(A).

[5] The Court discusses the standard for stating a claim of deliberate indifference to unsafe prison conditions *supra* Section II(B)(2).

time, and they are no longer safe for Plaintiff to walk across.  Defendants Warden Garrett, Assistant Warden John Doe 1, and Maintenance Director John Doe 2 are responsible for maintaining the walking paths.  These Defendants know that the walking paths are not safe for inmates who need a "flat yard," and they scheduled the walking paths to be resurfaced.  However, they never followed through, and the walking paths have not been resurfaced.

Based on these allegations, Garrett, John Doe 1, and John Doe 2 are responsible for the maintenance of the walking paths, and they know that the current condition of the walking paths is not safe for many of the inmates, including Plaintiff.  However, they have delayed resurfacing the walking paths.  These allegations are sufficient to support a colorable claim for injunctive relief at this preliminary screening stage.  Plaintiff's request for injunctive relief will proceed against Defendant Garrett and  Defendants John Doe 1 and John Doe 2, when Plaintiff learns their identities.

## III.    MOTION FOR PRELIMINARY INJUNCTION

Plaintiff has filed a motion for leave to file excess pages and a motion for a preliminary injunction.  (ECF Nos. 6, 3.)  The Court grants Plaintiff's motion for leave to file excess pages and accepts his motion for a preliminary injunction.  In his motion for preliminary injunction, Plaintiff requests that the Defendants be required to provide him appropriate medical care.  (ECF No. 3 at 1-2.)  Plaintiff also makes various requests regarding discovery of evidence, including that the Defendants preserve various records and provide him a list with the names and addresses of possible Defendants.  (*Id.* at 2-3.)

Injunctive relief, whether temporary or permanent, is an "extraordinary remedy, never awarded as of right."  *Winter v. Natural Res. Defense Council*, 555 U.S. 7, 24 (2008).  "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046,

1052 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20).  Furthermore, under the Prison Litigation Reform Act ("PLRA"), preliminary injunctive relief must be "narrowly drawn," must "extend no further than necessary to correct the harm," and must be "the least intrusive means necessary to correct the harm."  18 U.S.C. § 3626(a)(2).

As part of this order, the Court will refer this case to the Court's Inmate Early Mediation program.  The Court's Inmate Early Mediation program allows the parties a chance to come to a mutually beneficial settlement before the filing fee is paid, an answer is filed, or the discovery process starts.  Because the parties will have a chance to come to a settlement during this mediation process, the Court finds that an injunction would not be in the public interest at this time, and the Court denies the motion for injunctive relief without prejudice.  If the parties are not able to come to a settlement during mediation, Plaintiff may renew his request for injunctive relief.

## IV.    CONCLUSION

For the foregoing reasons, it is ordered that Plaintiff's motion to file excess pages in the FAC (ECF No. 8) is granted.  Plaintiff accepts the FAC (ECF No. 9) as the operative complaint in this case.  The Clerk of the Court will send Plaintiff a courtesy copy of the FAC.

It is further ordered that Plaintiff's claim of deliberate indifference to a serious medical need in Count I based on the failure to provide him shoe inserts will proceed against Defendants Dr. Marks, DON Parks, Nurse Brian, Warden Garrett, and Defendants Assistant Warden John Doe 1, Nurse John Doe 3, and Nurse John Doe 4, when Plaintiff learns their identities.

It is further ordered that Plaintiff's claim of deliberate indifference to a serious medical need in Count I based on the failure to provide him pain medication will proceed against Defendants Dr. Marks, DON Parks, Nurse Brian, and Defendants Nurse John Doe 3 and Nurse John Doe 4, when Plaintiff learns their identities.

It is further ordered that Plaintiff's claim of deliberate indifference to a serious medical need in Count I based on the failure to provide him access to a physical therapist,

or the tools to do physical therapy on his own, will proceed against Defendants Dr. Marks, DON Parks, Nurse Brian, Warden Garrett, and Defendants Assistant Warden John Doe 1, Nurse John Doe 3, and Nurse John Doe 4, when Plaintiff learns their identities.

It is further ordered that Plaintiff's negligence claim in Count IV is dismissed without prejudice, but without leave to amend, because Plaintiff cannot bring a state law tort claim against NDOC employees or immune contractors in federal court.

It is further ordered that Plaintiff's claim of deliberate indifference to unsafe prison conditions in Count IV will proceed against Defendant Garrett and Defendants John Doe 1 and John Doe 2, when Plaintiff learns their identities.

It is further ordered that Plaintiff's retaliation claim under the Eighth Amendment in Count II is dismissed with prejudice, as amendment would be futile. The Court liberally construes Count II as bringing a First Amendment retaliation claim. This claim is dismissed without prejudice.

It is further ordered that the Court construes Count III as bringing a claim for injunctive relief regarding an ongoing lack of medical care. This claim will proceed against Warden Defendant Garrett.

It is further ordered that Plaintiff's claim for injunctive relief regarding the state of the walkways at LCC in Count III will proceed against Defendant Garrett and Defendants John Doe 1 and John Doe 2, when Plaintiff learns their identities.

It is further ordered that Defendants Roe 1 and Roe 2 are dismissed from the entirety of this case without prejudice.

It is further ordered that Plaintiff's motion for leave to file excess pages regarding his motion for a preliminary injunction (ECF No. 6) is granted. The Court accepts the motion for a preliminary injunction.

It is further ordered that Plaintiff's motion for a preliminary injunction (ECF No 3) is denied without prejudice.

It is further ordered that, given the nature of the claim(s) that the Court has permitted to proceed, this action is stayed for 90 days to allow Plaintiff and Defendant(s)

an opportunity to settle their dispute before the $350.00 filing fee is paid, an answer is filed, or the discovery process begins. During this 90-day stay period and until the Court lifts the stay, no other pleadings or papers may be filed in this case, and the parties may not engage in any discovery, nor are the parties required to respond to any paper filed in violation of the stay unless specifically ordered by the court to do so. The Court will refer this case to the Court's Inmate Early Mediation Program, and the Court will enter a subsequent order. Regardless, on or before 90 days from the date this order is entered, the Office of the Attorney General must file the report form attached to this order regarding the results of the 90-day stay, even if a stipulation for dismissal is entered prior to the end of the 90-day stay. If the parties proceed with this action, the Court will then issue an order setting a date for Defendants to file an answer or other response. Following the filing of an answer, the Court will issue a scheduling order setting discovery and dispositive motion deadlines.

It is further ordered that "settlement" may or may not include payment of money damages. It also may or may not include an agreement to resolve Plaintiff's issues differently. A compromise agreement is one in which neither party is completely satisfied with the result, but both have given something up and both have obtained something in return.

It is further ordered that if the case does not settle, Plaintiff will be required to pay the full $350.00 statutory filing fee for a civil action. This fee cannot be waived, and the fee cannot be refunded once the Court enters an order granting Plaintiff's application to proceed *in forma pauperis*. If Plaintiff is allowed to proceed *in forma pauperis*, the fee will be paid in installments from his prison trust account. *See* 28 U.S.C. § 1915(b). If Plaintiff is not allowed to proceed *in forma pauperis*, the full $350 statutory filing fee for a civil action plus the $52 administrative filing fee, for a total of $402, will be due immediately.

It is further ordered that if any party seeks to have this case excluded from the inmate mediation program, that party must file a "motion to exclude case from mediation" no later than 21 days prior to the date set for mediation. The responding party will have

seven days to file a response. No reply may be filed. Thereafter, the Court will issue an order, set the matter for hearing, or both.

It is further ordered that if Plaintiff needs an interpreter to participate in the mediation program, Plaintiff will file a notice identifying the interpretation language and the need for the interpreter within 30 days from the date of this order.

The Clerk of Court is further directed to add the Nevada Department of Corrections to the docket as an Interested Party and electronically serve a copy of this order and a copy of Plaintiff's FAC (ECF No. 9) on the Office of the Attorney General of the State of Nevada by adding the Attorney General of the State of Nevada as an interested party on the docket. This does not indicate acceptance of service.

It is further ordered that the Attorney General's Office must advise the Court within 21 days of the date of the entry of this order whether it will enter a limited notice of appearance on behalf of the Interested Party for the purpose of participation in the Early Mediation Program. No defenses or objections, including lack of service, will be waived because of the filing of the limited notice of appearance.


DATED THIS ___31st___ day of March 2023.


_____
United States District Court

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| GUY T. MILLS,<br><br>                              Plaintiff,<br><br>        v.<br><br>MARKS, et. al.,<br><br>                              Defendants. | Case No. 3:22-cv-00217-RCJ-CSD<br><br>REPORT OF ATTORNEY GENERAL<br>RE: RESULTS OF 90-DAY STAY |

**NOTE: ONLY THE OFFICE OF THE ATTORNEY GENERAL WILL FILE THIS FORM. THE INMATE PLAINTIFF MAY NOT FILE THIS FORM.**

On _____ [*the date of the issuance of the screening order*], the Court issued its screening order stating that it had conducted its screening pursuant to 28 U.S.C. § 1915A, and that certain specified claims in this case would proceed. The Court ordered the Office of the Attorney General of the State of Nevada to file a report 90 days after the date of the entry of the Court's screening order to indicate the status of the case at the end of the 90-day stay. By filing this form, the Office of the Attorney General hereby complies.

///
///
///
///
///
///
///
///
///
///

**REPORT FORM**

[Identify which of the following two situations (identified in bold type) describes the case, and follow the instructions corresponding to the proper statement.]

**Situation One: Mediated Case**: **The case was assigned to mediation by a court-appointed mediator during the 90-day stay.** [If this statement is accurate, check **ONE** of the six statements below and fill in any additional information as required, then proceed to the signature block.]

_____ A mediation session with a court-appointed mediator was held on _____ [*enter date*], and as of this date, the parties have reached a settlement (*even if paperwork to memorialize the settlement remains to be completed*). (*If this box is checked, the parties are on notice that they must SEPARATELY file either a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in the case until a specified date upon which they will file a stipulation of dismissal.*)

_____ A mediation session with a court-appointed mediator was held on _____ [*enter date*], and as of this date, the parties have not reached a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

_____ No mediation session with a court-appointed mediator was held during the 90-day stay, but the parties have nevertheless settled the case. (*If this box is checked, the parties are on notice that they must SEPARATELY file a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in this case until a specified date upon which they will file a stipulation of dismissal.*)

_____ No mediation session with a court-appointed mediator was held during the 90-day stay, but one is currently scheduled for _____ [*enter date*].

_____ No mediation session with a court-appointed mediator was held during the 90-day stay, and as of this date, no date certain has been scheduled for such a session.

_____ None of the above five statements describes the status of this case. Contemporaneously with the filing of this report, the Office of the Attorney General of the State of Nevada is filing a separate document detailing the status of this case.

* * * * *

**Situation Two: Informal Settlement Discussions Case**: **The case was NOT assigned to mediation with a court-appointed mediator during the 90-day stay; rather, the parties were encouraged to engage in informal settlement negotiations.** [If this statement is accurate, check **ONE** of the four statements below and fill in any additional information as required, then proceed to the signature block.]

_____ The parties engaged in settlement discussions and as of this date, the parties have reached a settlement (*even if the paperwork to memorialize the settlement remains to be completed*). (*If this box is checked, the parties are on notice that they must SEPARATELY file either a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in this case until a specified date upon which they will file a stipulation of dismissal.*)

22

1

2 _____    The parties engaged in settlement discussions and as of this date, the parties have not reached a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

3

4 _____    The parties have not engaged in settlement discussions and as of this date, the parties have not reached a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

5

6 _____    None of the above three statements fully describes the status of this case. Contemporaneously with the filing of this report, the Office of the Attorney General of the State of Nevada is filing a separate document detailing the status of this case.

7

8 Submitted this _____ day of _____, _____ by:

9

10 Attorney Name: _____          _____
                                    Print                                                      Signature

11

12 Address: _____          Phone:

13 _____          _____

14                                                      Email:
                                                              _____

15

16

17

18

19

20

21

22

23

24

25

26

27

28